IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUNBELT RENTALS, INC.,                    §
                                          §
          Plaintiff,                      §
                                          §
v.                                        §          Civil Action No. 3:21-CV-3241-N
                                          §
JIMMY HOLLEY,                             §
                                          §
          Defendant.                      §

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Sunbelt Rentals, Inc.'s ("Sunbelt") motion for a temporary restraining order ("TRO") [24]. The Court concludes that Sunbelt has carried its burden to demonstrate a likelihood of success on the merits, irreparable harm without an injunction, and that that the balance of equities — between the parties and in consideration of the public interest — favors entry of an injunction. Accordingly, the Court grants the motion and issues a temporary injunction against Defendant Jimmy Holley.

### I. THE ORIGINS OF THE MOTION

Sunbelt rents heavy equipment and accessories to institutional and retail customers. Pl.'s Compl. ¶¶ 16–17 [1]. Holley worked at Sunbelt for over twenty years. *Id.* at ¶30. For over a decade before he left the company last year, Holley served as a salesman, primarily covering institutional accounts. *Id.* at ¶¶ 19, 31–32.

During his employment with Sunbelt, Holley signed an employment agreement that contained various restrictive covenants. *Id.* at ¶ 34. In pertinent part, these read:

ORDER – PAGE 1

6.1    During the term of this Agreement and for a period of twelve (12) months after the date of the expiration or termination of this Agreement based on Employee's voluntary resignation or Employee's termination of employment by Corporation (the "Restrictive Period"), Employee shall not directly or indirectly:

. . . .

(ii)    solicit the provision of products or services, similar to those provided by Corporation at the "Designated Stores" (as defined below), to any person or entity who purchased or leased products or services from Corporation at any time during the twelve (12) calendar months immediately preceding the termination or expiration of this Agreement for any reason and for or with whom Employee had contact, responsibility or access to Confidential Information related to such person or entity; provided, however, the restrictions of this subsection (ii) shall be limited in scope to the "Territory" (as defined below) and to any office, store or other place of business in which, or in connection with which, Employee has had business contact with such persons or entities during the twelve (12) calendar months immediately preceding the termination or expiration of this Agreement for any reason.

. . . .

(iv)    compete with the Corporation, its successors and assigns by engaging, directly or indirectly, in the Business as conducted at the Designated Stores or in a business substantially similar to the Business as conducted at the Designated Stores, within the "Territory," as hereinafter defined; or

(v)    provide information to, solicit or sell for, organize or own any interest in (either directly or through any parent, affiliate, or subsidiary corporation, partnership, or other entity), or become employed or engaged by, or act as agent for any person, corporation, or other entity that is directly or indirectly engaged in a business in the "Territory", as hereinafter defined, which is substantially similar to the Business as conducted at the Designated Stores or competitive with Corporation's Business as conducted at the Designated Stores[.]

Ex. A to Pl.'s Compl. ("Employment Agreement") 4 [1-1].   The agreement defined

"Business" as:

(i)    selling and renting equipment, tools, scaffolding and parts for use in the manufacturing, industrial and construction industries, (ii) selling and renting tools and homeowner repair equipment to retail customers, and (iii)

ORDER – PAGE 2

the provision of related services including the erecting and dismantling of scaffolding . . . .

*Id.*  The restrictions extended fifty miles from any store "in which, or in connection with which," Holley generated sales in the year preceding his departure.  *Id.*

Holley testifies that he became insecure in his standing with Sunbelt and sought alternative employment.  Ex. 3 Pl.'s App. Supp. Mot. TRO 32:20–33:6, 45:1–47:14 [25].  The record is not entirely clear, but it appears that over the course of last summer Holley engaged in a series of discussions with a contact at a Sunbelt competitor, EquipmentShare.com ("Equipment Share").  *Id.* at 28:10–30:12.  He resigned from Sunbelt last August and began a new job with Equipment Share the next month, purportedly based at Equipment Share's Ardmore, Oklahoma store.  *See id.* at 115:19–22, 118:21–119:1.

Sunbelt sued Holley in this Court late last year, alleging that he has actively solicited former customers and worked on behalf of Equipment Share within the area covered by the nonsolicitation and noncompetition of the employment agreement.  Further, Sunbelt seeks relief for the alleged theft and misuse of trade secret information with which Sunbelt entrusted Holley.  Sunbelt quickly moved for a preliminary injunction, and the Court issued a Scheduling Order laying out a timeline for expedited discovery and briefing.

Pursuant to that Order, Sunbelt deposed Holley.  He admitted to facilitating equipment rentals to various former clients within fifty miles of his primary Sunbelt location in Lewisville, Texas.  *See, e.g.*, *id.* at 195:10–23, 208:24–209:21, 217:20–24, 223:17–224:9, 231:4–232:25.  Sunbelt thereafter sought this temporary restraining order.  Sunbelt requests the Court enjoin Holley from "directly or indirectly selling or renting"

ORDER – PAGE 3

thirteen enumerated categories of equipment within fifty miles of Sunbelt's Lewisville, Texas location.

## II. LEGAL STANDARD FOR A TEMPORARY INJUNCTION

To obtain a preliminary injunction, a party must establish (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974)). A preliminary injunction "is appropriate only if the anticipated injury is imminent and irreparable," *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975), and not speculative. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015); *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient" to show irreparable harm).

A TRO is a "highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, Civ. No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). As such, a movant must establish the same four elements as for a preliminary injunction. However, TROs are restricted to "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974).

ORDER – PAGE 4

### III.  SUNBELT HAS ESTABLISHED
### THE FOUR ELEMENTS FOR A TRO

#### A.  Likelihood of Success on the Merits

As a threshold matter, the Court must determine whether Sunbelt has demonstrated a likelihood of success on the merits.  This element requires that the movant establish a prima facie case; it does not require the movant show an entitlement to summary judgment. *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011).  Courts look to substantive standards supplied by the law giving rise to the underlying cause of action.  *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).

In this case, Sunbelt seeks an injunction to prevent the alleged ongoing breach of the terms of its employment agreement with Holley.  Under Texas law, the "elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach."  *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.).

In particular, Sunbelt alleges that Holley has violated the terms of the restrictive covenant in his employment agreement.  In Texas, an "agreement not to compete is in restraint of trade and therefore unenforceable on grounds of public policy unless it is reasonable."  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990); *see also* TEX. BUS. & COM. CODE § 15.05(a).  A court will enforce a restrictive covenant when it conforms to section 15.50(a) of the Texas Business and Commerce Code, which provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the

extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.

Thus, the Court must first determine whether the restrictive covenants are ancillary to or part of an otherwise enforceable agreement.

  *1. Ancillary to an Otherwise Enforceable Agreement.* — Enforcement of a restrictive covenant requires an initial finding of an enforceable agreement.  An enforceable agreement "can emanate from at-will employment so long as the consideration for any promise is not illusory." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006).  Texas courts have held that promises by an employer to provide confidential information and a contemporaneous promise by the employee not to disclose that information create an enforceable agreement.  *Curtis v. Ziff Energy Grp, Ltd.*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  And even a unilateral contract can support enforcement of restrictive covenants, so long as the employer performs after the agreement is made.  *Alex Sheshunoff*, 209 S.W.3d at 655.

The employment agreement between Sunbelt and Holley recites several pieces of confidential or purportedly trade-secret information that Sunbelt would provide to Holley and which Holley agreed not to disclose.  Holley objects that some of this information could be obtained from public sources or that Sunbelt made no serious effort to ensure its confidentiality.  Holley does not argue, however, that Sunbelt failed to supply other specific types of information identified in the agreement.  Among these are internal cost and profit as well as information about Sunbelt's inventory related to various products or product

lines.  Holley's deposition implies that this information was available to him and that he used it in negotiating the rate agreements he had with clients.  Ex. 3 Pl.'s App. Supp. Mot. TRO 105:07–18 (discussing how he prices jobs at Equipment Share where the context suggests that he did the same at Sunbelt).  Holley does not suggest that these particular pieces of information were "handed out like candy," by Sunbelt to its competitors and customers.  Def.'s Br. Resp. Mot. TRO 14 [28].  Accordingly, the Court holds that the information Sunbelt provided — and which Holley agreed not to disclose — constitutes consideration sufficient to render the agreement enforceable.

The restrictive covenants are ancillary to this otherwise enforceable agreement. Applying a more stringent, since-abrogated standard, a Texas court held that a similar agreement was ancillary to an otherwise enforceable agreement.  *Curtis*, 12 S.W.3d at 118. Given the Texas Supreme Court's subsequent loosening of this component of the analysis, *see Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 773–76 (Tex. 2011), the Court concludes that the restrictive covenants Sunbelt seeks to enforce are ancillary to the enforceable employment agreement.

*2. Reasonableness of Restrictions.*  — After determining that the restrictive covenants are ancillary to or part of an otherwise enforceable contract, the court assesses the reasonableness of the restrictions.  Reasonableness is a matter of law for the court. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991).  If an agreement contains unreasonable restrictions as to time, geography, or scope but is otherwise enforceable, then the court will reform the terms to make them reasonable.  TEX. BUS. & COM. CODE § 15.51(c).  In the case of a contract for personal services, such as those provided by a

ORDER – PAGE 7

salesman, the promisee bears "the burden of establishing that the covenant meets the" requirements of time, geography, and scope in section 15.50.  TEX. BUS. & COM. CODE § 15.51(b).

Limiting the effect of the covenants as to time, geography, and scope ensures that the restrictions go no further than necessary to protect an employer's legitimate business interests.  *See, e.g.*, *DeSantis*, 793 S.W.2d at 682 (identifying as protectible interests business goodwill, trade secrets, and other confidential or proprietary information); *Haas*, 818 S.W.2d at 387 (recognizing the employer's "legitimate business interest" in preventing a former employee from using the "business contacts and rapport" established during employment to take the employer's clients).  To ensure the legitimacy of the interest protected, the restrictions should "bear[] some relation to the activities of the employee." *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.) (citing *Haass*, 818 S.W.2d at 386–87).

Texas courts will not enforce covenants that lack temporal or spatial restrictions. *Juliette Fowler Homes v. Welch Assocs., Inc.*, 793 S.W.2d 660, 663 (Tex. 1990) (refusing to uphold restrictive covenant without spatial restrictions); *Caraway v. Flagg*, 277 S.W.2d 803, 805 (Tex. App.—Dallas 1955, writ ref'd n.r.e.) (identifying longstanding rule against restrictions without temporal limitations).  Industry-wide exclusions likewise encounter significant resistance.  *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Haas*, 818 S.W.2d at 386–88). Finally, some support exists — in lower-court opinions — for the proposition that any covenant restricting the post-employment conduct of a former employee who provided

ORDER – PAGE 8

personal services, such as a salesman, must not extend to clients with whom the employee had no dealings while employed. *See Wright*, 137 S.W.3d at 298; *Stroman*, 923 S.W.2d at 85.

Holley seizes on this language, arguing that the noncompetition covenants Sunbelt seeks to enforce are unreasonable because they extend beyond clients with whom Holley dealt while employed by Sunbelt.[1] Even if the Court credits this argument, it goes only to the scope of the restriction. As such, it does not affect Sunbelt's likelihood of success on the merits because the court must reform an unreasonable restriction as to scope if the agreement is otherwise enforceable. TEX. BUS. & COM. CODE § 15.51(c). The mandate to reform applies only to injunctive relief, but in its Complaint, Sunbelt sought reformation and future enforcement if the Court held the covenants unreasonable. Pl.'s Compl. ¶¶ 123–24. Hence, the argument cannot fully defeat Sunbelt's request for a TRO. The Court must, however, address this argument in full to determine if it must reform the covenants for the purposes of appropriately limiting the terms of any injunction.

The case law does not fully support the bright-line standard Holley seeks to invoke. The intermediate-court cases involving restrictions on salespersons cite to — and extend in a significant way the principle found in — a Texas Supreme Court decision. Because the later cases expand the original rule to cover facts far different from those that the Texas

---

[1] The Court notes at the outset that the *nonsolicitation* portion of the restrictive covenants at issue here do not extend beyond Holley's customers or customers about whom Holley obtained confidential information.

ORDER – PAGE 9

Supreme Court confronted in *Haass*, this Court declines to apply these persuasive authorities to this dispute.

The Texas Supreme Court case cited by all the subsequent authorities involved the merger of two accounting firms. *Haass*, 818 S.W.2d at 382. A partner in the firm being acquired signed an agreement at the time of the merger that included a provision entitling the firm to liquidated damages if the partner left the firm and then solicited firm clients. *Id.* at 383. The limitation applied for two years after the partner withdrew from the partnership; it also imposed an incredibly broad definition of client — any client of the firm at the time of the partner's departure and any client who became a client of the firm during the two years following the partner's withdrawal. *Id.* at 383 n.3. First, the Court held that this damages provision functioned as a restrictive covenant and should be assessed using the reasonability standard applicable to restrictive covenants. *Id.* at 385. Second, the Court held that under that standard, the limitations were unreasonable. *Id.* at 388. Restricting the partner from soliciting *any* client of an international accounting firm gave the limitation nearly unlimited geographical reach, and extending this prohibition to the partnership's after-acquired clients would impose an unreasonable burden on the former partner acquiring any new clients "because he would have to, in effect, take a prospective client's accounting history." *Id.* at 386–87 (internal quotation marks omitted). The Court cited with approval decisions from other jurisdictions limiting restrictions on departing partners to those clients with whom the partner had contact while a member of the partnership. *Id.* at 387.

ORDER – PAGE 10

An intermediate appellate court then extended the principle discussed in *Haass* to a case involving an insurance salesman. *Stroman*, 923 S.W.2d at 83. In exchange for a grant of restricted stock units, the salesman signed an agreement that, *inter alia*, prevented him from doing business with any brokerage clients or accepting employment with any entity doing business with the brokerage's clients if he left the firm. *Id.* The limitations that the brokerage sought to impose did not limit themselves to the salesman's clients and included no temporal limitation. *Id.* at 85. The court cited *Haass* for the proposition that in "the case of covenants applied to a personal services occupation, such as that of a salesman, a restraint on *client solicitation* is overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment." *Id.* (emphasis added). Both the lack of a time limit and inclusion of clients with whom the salesman had no contact, the court reasoned, made the nonsolicitation covenant unenforceable. *Id.*

Then, in the most factually similar case to this dispute, the Beaumont Court of Appeals arguably extended the *Haass* principle to *any* covenant not to compete. The defendant in that case worked as a salesman of sporting goods before defecting to a competitor. *Wright*, 137 S.W.3d at 291–92. His first employer sought a TRO to enforce restrictive covenants to which the salesman had agreed. *Id.* at 291. The covenants prohibited the salesman from "conducting any sales related activities for a business related to the promotion, marketing, distribution, manufacturing, sourcing, importing and/or sale of sports related equipment and/or supplies to institutional customers" throughout an area spanning twenty-nine counties in Texas. *Id.* at 298. In addition, the covenants prevented him from "doing business with the customers, suppliers, clients, licensors, licensees,

ORDER – PAGE 11

distributors, dealers, or independent salespersons of [his former employer] or any its affiliates that conduct business in [his] sales district," regardless of whether the salesman had direct contact with these individuals while employed. *Id.* The court, citing *Haass*, stated that Texas law prohibits *any* "covenant not to compete that extends to clients with whom a salesman had no dealings during his employment." *Id.* After identifying that the restrictions extended beyond "customers with whom [the defendant] had dealings while employed" as the principal deficiency, the court held that "the covenants are over broad [sic] and are unreasonable restraints of trade" without elaboration. *Id.*

The Fifth Circuit then cited these cases in support of the proposition that "covenants not to compete that extend to clients with whom the employee had no dealings . . . are overbroad and unreasonable." *D'onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 211 (5th Cir. 2018). That case involved a former saleswoman for "the largest seller of ocean-going cruises in the world." *Id.* at 203. Her employment agreement restricted her from working, in any capacity, "for any direct or indirect competitor of [her employer] in any job related to sales or marketing of cruises, escorted or independent tours, river cruises, safaris, or resort stays." *Id.* at 204. Additionally, she could not solicit any client of her former employer who had "been a customer . . . within the preceding 3 years." *Id.* Even without considering the limitations on the former saleswoman's capacity to solicit clients, the covenants essentially restricted her from working in a sales or marketing function within any tourism-related company worldwide. Viewing the prohibitions holistically, the court held that the restrictions amounted to "unreasonable restraints on trade and [were] therefore unenforceable." *Id.* at 212.

ORDER – PAGE 12

The Court disagrees with Holley that *D'Onofrio* compels the conclusion that the restrictive covenants in this case are unreasonable. The elements of the restrictive covenants in *D'Onofrio* distinguish that case. Unlike the nonsolicitation agreement that Sunbelt seeks to enforce, the nonsolicitation clause in *D'Onofrio* prohibited the saleswoman from soliciting firm clients beyond those she dealt with or about whom she had confidential information. Additionally, the noncompetition clause swept so broadly as to constitute an industry-wide exclusion by encompassing tourism activities in which the former employer apparently did not engage. Most strikingly, neither the noncompetition or nonsolicitation provisions contained any geographic limitations. On the facts, therefore, *D'Onofrio* cannot fairly be characterized as directly on-point. The Court reads the Fifth Circuit's statement about the lack of a former-client restriction as an attack on the nonsolicitation clause.

This interpretation accords with the caselaw and common sense. The Texas Supreme Court authority from which this line of cases derives dealt only with a nonsolicitation provision. Limiting a nonsolicitation clause to the former employee's customers or clients forges a connection between the prohibition and the interest to be protected — preventing the former employee from usurping the rapport with clients facilitated by the affiliation with the employer. But Texas courts have also long enforced distinct noncompetition clauses. Noncompetition clauses concern for whom the former employee may ply his talents, not to whom he directs the competitive conduct, and they protect the employer by ensuring that a former employee cannot weaponize his former employer's sensitive information and the training provided to the employee for the benefit

of a competitor. This distinction explains why it would not make sense to require reference to former customers or clients in a noncompetition provision — this type of limitation does not concern itself with customers or clients.

Recognition of the distinction between nonsolicitation and noncompetition clauses finds support in the case law. The Eastern District of Texas, in a recent, post-*D'Onofrio* ruling granted a TRO under remarkably similar circumstances to those in this case. As in this case, the dispute involved a salesman who departed to take a job with a competing company. *Keurig Dr. Pepper, Inc. v. Chenier*, 2019 WL 3958154, at *1–2 (E.D. Tex. Aug. 22, 2019). There, as here, the defendant's nonsolicitation clause only applied to former customers and customers about whom he obtained confidential information.[2]  *Id.* at *11. But, like the noncompetition clause that Sunbelt seeks to enforce, the noncompetition provision contained no former-client restriction. *Id.* at *10. It did, however, include explicit geographic and scope limitations. *Id.* After separately analyzing the noncompetition and nonsolicitation provisions, the court upheld both. *Id.* at *11. Having concluded that the lack of a client-specific limitation in the noncompetition provisions of Holley's restrictive covenants does not render them per se unreasonable, the Court proceeds with the traditional assessment.

The restrictive covenants that Sunbelt seeks to enforce impose reasonable limitations as to time, geography, and scope. First, the temporal limitation, which governs

---

[2] In fact, the nonsolicitation clause Sunbelt asks the Court to enforce is less expansive than that in *Chenier* because it layers an additional geographic restriction on top of limiting its application to Holley's former customers (or customers about whom he had confidential information).

ORDER – PAGE 14

all the covenants, runs for only a year, and Texas courts have routinely upheld restrictive covenants extending for two years or more.[3]  *See, e.g.*, *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Second, Sunbelt may enforce the nonsolicitation provision because it imposes narrower restrictions than the nonsolicitation clause held enforceable in *Chenier*.  Third, the geographical limitation does not constitute an unreasonable restriction.  Texas courts generally uphold restrictive covenants covering the ex-employee's territory.  *Merritt Hawkins & Assocs., LLC v. Gresham*, 79 F. Supp. 3d 625, 640 (N.D. Tex. 2015) (upholding covenant that spanned Dallas County and all adjacent counties for employee with "telephone sales job" based in Dallas County).  Sunbelt generates revenue at job sites far afield from Sunbelt's own physical locations, and with an eye toward this reality, the Court concludes that the agreement's geographic reach of a fifty-mile radius around each store where Holley generated revenue in the past year imposes a reasonable limitation.  Finally, the scope of the prohibitions goes only so far as to protect Sunbelt's legitimate interests.  The definition of the defined term "Business," which sets the scope of the restrictions, covers a discrete market in which Sunbelt undeniably actively participates.  The Court concludes that this definition does not extend so broadly as to render the scope of the restrictive covenants unreasonably burdensome.

---

[3] Holley argues that a tolling provision makes the temporal limitation indefinite. Unlike in the case he relies on for support, where the employer's unilateral conduct could trigger tolling, however, Holley can avoid the tolling provision coming into effect by not violating the terms of the agreement.

### B.  Irreparable Harm

"Under Texas law, covenants not to compete present the paradigm of irreparable injury, so that reasonable enforcement appears to be the rule rather than the exception." *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1354 (N.D. Tex. 1991) *aff'd* 948 F.2d 1286 (5th Cir. 1991).  Sunbelt alleges, and Holley admitted under oath, that customers who previously accounted for millions of dollars of revenue have followed Holley to a competitor.  Sunbelt has established that absent an injunction, it will likely suffer irreparable harm.

### C.  Balance of Hardships

Sunbelt will suffer greater harm if the Court does not issue the injunction than Holley will endure if the Court does grant relief.  Continued violation of the agreement will impose substantial impairment of Sunbelt's goodwill, precisely the interest it sought to protect by means of the restrictive covenant.  Enforcing this agreement will limit Holley's sales activities, but not unreasonably.  He can continue to work outside of the area defined in the restrictive covenants.  This limitation should not impose substantial hardship — his current employment arrangement is assertedly based in Ardmore, Oklahoma.  Moreover, the burden imposed by a temporary injunction goes no further than the terms to which Holley voluntarily consented.

### D.  Public Interest

Enforcement of restrictive covenants implicates a sensitive balancing of public interests between the mobility of employees and the capacity of employers to protect their investment in human capital.  These public interest considerations, however, have become

subsumed into the substantive law that determines when a court will uphold a restrictive covenant. As such, the Court has already addressed these considerations in its foregoing analysis on the likelihood of Sunbelt's succeeding on the merits. Beyond the concerns already reflected in Chapter 15 of the Texas Business and Commerce Code, the public has an interest in the enforcement of valid contracts. *See, e.g.*, *CyberX Grp., LLC v. Pearson*, 2021 WL 1966813, at *12 (N.D. Tex. May 17, 2021). As such, the Court concludes that enforcement of this agreement by way of temporary injunction will serve the public interest.

## IV. SUNBELT DID NOT DELAY IN SEEKING A TRO

Holley also argues that the Court should reject Sunbelt's request for emergency relief on the grounds that it unjustifiably delayed in acting. The Court disagrees. By his own testimony, Holley states that he did not begin working for a competitor until September 2021. Sunbelt filed its complaint in late December 2021, just over three months later. Thereafter, it quickly sought a preliminary injunction. Only after Holley openly admitted to certain conduct in his deposition did Sunbelt seek a TRO, asking that the Court temporarily impose narrower restrictions on Holley during the pendency of the preliminary injunction process. As the Court has noted, a TRO is an exception form of relief that involves a highly accelerated version (of the already expedited) preliminary injunction process. The Court declines to punish Sunbelt for first seeking relief via the more thorough preliminary injunction process. To so hold would incentivize parties to seek equitable relief via a TRO in circumstances that do not truly warrant that exceptional relief in order to avoid waiving their rights.

ORDER – PAGE 17

## CONCLUSION

For the foregoing reasons, the Court concludes that Sunbelt has demonstrated its entitlement to temporary injunctive relief against Holley.  Accordingly, the Court grants Sunbelt's motion for a TRO.

Signed March 18, 2022.


_____
David C. Godbey
United States District Judge